contains several different operative and important facts. The Fifth Circuit decided in Kebido's favor based upon the fact that at the time SORNA passed, Mr. Kebido had been quote unconditionally released from any sort of special relationship with the federal government and the Fifth Circuit did not include just his sentence in custody but also any form of parole, etc. at the time of SORNA having been passed. The Supreme Court, however, in reversing the Fifth Circuit, did not incorporate or emphasize those same time frames. While the Fifth Circuit emphasized the fact that Kebido had been not only released from custody but was also off parole and not in any kind of special relationship with the government, the Supreme Court repeatedly throughout its opinion emphasized the fact that the relevant time frame, the important time frame, was the time of Mr. Kebido's offense and conviction. And what the government essentially asks this court to do is to use the Fifth Circuit's definition of unconditional release and the Supreme Court's rationale, combine the two and apply them to Mr. Coppock. And I don't think that that is a plausible or appropriate reading of Kebido. I think, and I'll be the first to admit before this court that I don't come here in exactly the strongest arguing position given the jurisprudence of this court. But I will say that I think that our Article I argument survives the Supreme Court's opinion in Kebido. Well, do you think Kebido is clear about this point, that time of offense versus time of release is dispositive? Well, I do. I think that the perhaps most prominent distinguishing factor between Kebido and the present case is that, at least as far as the Supreme Court is concerned, is that at the time Kebido goes to his court-martial, faces his judge, enters his plea of guilty, there is on the books a federal statute that creates or imposes upon him obligations after his time of conviction. Whereas with Mr. Coppock, that's not the case. The time that Jim Coppock goes before his court-martial, there are no federal laws that impose upon him an ongoing obligation. There's not even a law in the state of Nebraska that does that. When Sorna became applicable, wasn't he in one of those special relationships? He was on parole. And I think that, as I've said from the outset, how this case defines unconditional will My only response to that is that it's the Fifth Circuit that seems to stress the ongoing special relationship or the existence of parole, whereas the Supreme Court does not seem to emphasize that. The Supreme Court seems to be more concerned about what obligations were in existence at the time of the offense and conviction. And that's how they use the military regulation clause to allow Sorna to survive. And maybe I misread it, but I read it sort of the opposite. I read it that they looked to the Wetterling Act because there was no special relationship with Kibbedo. Am I misreading that? My understanding of the Supreme Court's opinion in Kibbedo was that at the time, the reason why he was in, that that court can say that Kibbedo was in a special relationship with the government was that the Wetterling Act passed in 1994. Kibbedo proceeded to his court-martial conviction in 1999 and thus was on notice that at the moment he was convicted, there was thereafter an ongoing obligation for him to register. And therefore, when Sorna's passed in 2007... But why do you think that makes it necessary and proper in carrying out the military regulation clause, but that it's not necessary and proper if the law comes into effect when he's on parole? I understand the distinction you're making, but can you explain why, under the necessary and proper clause, one is necessary and proper to implementing the military regulation clause and the other is not? Because I believe that the Article 1 authority in Kibbedo's case is derived from the fact that Congress is implementing and establishing a system of military justice, and that when the military court-martialed Anthony Kibbedo, the Wetterling Act was a known component of Kibbedo, I see that this is not an attenuated use of Article 1 power, because we are essentially here regulating the Uniform Code of Military Justice. We are establishing consequences to military court-martial. Whereas in Mr. Coppock's case, that's not true. No one could say that at the time James Coppock appeared before his court-martial that the federal government was, at that time, regulating the use of the military's ability to court-martial its members. By the time the Wetterling Act is passed, James Coppock is halfway done with his sentence, possibly discharged from the military and finishing out his term, and is in no relationship with the government by the time he's released from custody in 1997. But he is on parole, and a standard condition of parole is to comply with all state and federal laws. That is correct. So by then, SORNA and the Wetterling Act had already passed, so wouldn't he have to comply with those? I don't believe so. I think, and that's the government's position, that there was this State of Nebraska registration obligation that took place in January of 1997. I don't believe, though, that the Wetterling Act, well, there's two different, three different relevant possible Wetterling Act subsections. There's the 14072 I-2, which is what they used in Elk Shoulder, and which is what the government's asking this court to do in the form of the State of Nebraska registration. Importantly, though, the Supreme Court in Kebido never raises that as a possible jurisdictional hook. And then there's I-3 and I-4. I-3 is plainly inapplicable because it deals with people in the Federal Bureau of Prisons, which Mr. Coppock never was. And so, plainly, that's inapplicable. I-4 is the closest we get in terms of a Wetterling Act hook for Mr. Coppock, and it deals with people who are subsection, and I don't speak of the entire Wetterling Act, but that subsection says people who are sentenced or a defendant who is sentenced, which seems to militate against retroactivity. But then, secondly, those offenses, the court martial offenses, are not defined by the Secretary of Defense until 1998, well after the time, again, stressing the Supreme Court's relevant dates, at the time of Mr. Coppock's offense and conviction. So I don't think that the Wetterling Act applied to Mr. Coppock. At best, there may have been a State obligation, but I don't think that the State registration subsection of the Wetterling Act, the I-2, applied to Jim Coppock, in the same way that the Supreme Court didn't seem to think that it applied to Anthony Kebido. What do you think about the discussion in Comstock of the government's authority or power to act as a custodian of its prisoners, which arguably includes people who are in parole status? First of all, from the outset, I necessarily agree with the Fifth Circuit's discussion of Comstock. I think that Comstock only gets a discussion of SORNA so far. I mean, obviously, in Comstock, you're dealing with a group of federal prisoners. There is a longstanding Article I federal power to deal with those federal prisoners. In the case of sex offender registration, that is a relatively new area for the federal government to delve into. So I think that Comstock only gets you so far. Well, in Kebido, there was no argument that the man was in custody. Correct. Because his parole had expired when the law came into effect. Correct. So I don't think your answer is that this discussion of Comstock is not responsive because it's factually different. Correct. And there was not in custody. So I'm asking you, if you consider parole to be a form of custody, does the Comstock discussion of the government's power to act as a federal custodian carry a constitutional regulation? I don't think that it does. I don't think that the basis for SORNA having been well, first of all, Mr. Coppock was on parole from a military conviction, which I think differentiates him from parole from a federal conviction. And I think that obviously the Comstock opinion deals with federal prisoners. People are in the custody of the Bureau of Prisons or an ongoing parole relationship. But Mr. Coppock was released from military custody. And I think that's an important decision, an important factor in the Supreme Court's Kebido opinion because in terms of the Comstock analysis, they are linking it more to the Congress' ability to regulate the military forces than it is Congress' ability to regulate recently paroled or federal prisoners, which is what the issue was in the Comstock. So I think as it relates to the military regulation clause, the analysis is the same as the Fifth Circuit considered it in Kebido, which is if we're calling this a power, Congress' power to regulate the military, then I see I'm into my rebuttal time, but if you're calling this Congress' ability to regulate the military, then the analysis has to be different between Mr. Kebido, who approached his court-martial knowing that the Weddling Act was in place, and Mr. Coppock, who approached his with no such federal law enacted or even contemplated at that point. With that, I'll yield to Mr. Norris. We'll hear from the government. Mr. Norris, good afternoon. You may proceed. Good afternoon, Your Honor. May it please the Court, my name is Michael Norris. I'm going to represent the appellee of the United States in this matter. I'm asking this Court to affirm the decision of the District Court, which denied Mr. Coppock's motion to dismiss. Although the case demands the same result as the Supreme Court's recent decision in Kebido and the Ninth Circuit's recent decision in Elkshoulder, Mr. Coppock's case is much different than as is presented by Kebido in Kebido as well as Mr. Elkshoulder. His case is different in that it is much stronger. It's much stronger for the government for one basic and very important reason. At the time that SORNA was enacted and at the time SORNA was made applicable to pre-act offenders, he was on parole. How does that make it stronger than Kebido? Because he's under the thumb of the federal government and that's, I think, if you look at Kebido. But in Kebido, the law, as the Court explained it, because they allowed the combination of the Wetterling Act, the law was in effect before he committed his offense. I agree that that's an accurate statement. Why isn't that stronger than this case? Because at the time in which SORNA was effective, Mr. Coppock was on parole. He was still under supervision. And I think you have to look at Kebido, the en banc decision of Kebido, and you have to look at them and see how that gets presented to the Supreme Court and the limited basis in which the Supreme Court determines and decides Kebido. What they're looking for is whether or not, and the direct issue in Kebido is whether the Necessary and Proper Clause granted Congress the power to enact registration requirements and apply them to federal offenders who had completed their sentence prior to SORNA's enactment. Yeah, but the way they answered it is to say he hadn't completed his sentence when the registration requirement was put into effect because the Wetterling Act was passed before he even committed his offense. And I'm suggesting that he hasn't completed his sentence until he's off parole or supervised release. I'm just wondering why you think that's a stronger case than Kebido. It's a weaker case because your guy was already convicted before the law went into effect. I think it's a stronger case because when the law goes into effect, he's still under federal supervision. And that seems to me to be what the Kebido Supreme Court decision was basing its analysis on. If you look at some of the quotes from Kebido and you look at what the majority opinion indicates as to how they reached their ruling, we do not agree with the Circuit Court's conclusion. And in explaining, we need not go much further than the Circuit's critical assumption that Kebido's release was unconditional. That after Kebido's release, he was not in any special relationship with the federal government. It's that any special relationship with the federal government that the Kebido Supreme Court and that the Solicitor General's office was looking to show that he was still under some supervision, still under some sort of relationship with the federal government. We don't have to make that leap as it goes to Mr. Coppock because he is under federal supervision not only at the time that SORNA is enacted, but he's under federal supervision at the time that SORNA takes effect and is applicable to pre-act offenders either under the initial date in which the Attorney General makes that clear or after he ratifies that sometime in 2008. In fact, he's under federal supervision from the time he commits his offense and is convicted in military court all the way until the time of March of 2009 when he is released from his federal parole. A federal parole that is supervised by the United States Probation Office, a federal parole that obviously puts him under the thumb of the federal government and is less of a reach than having to go back to the Wetterling Act to show that he still had consequences as a result of a prior military conviction. I think that's the best explanation I can put on that and that's been the position from the government right from the outset. You said that he was under supervision at the time he committed his offense. Well, from the time he, I'm sorry, not committed, convicted of his What do you mean he was under military supervision? At the time that the military court exercises jurisdiction over him, then he's being supervised, he's convicted, he's sentenced. At all times in which he's sentenced in a military prison, the federal government is, he's under federal government supervision, a form of federal government supervision. When he is released on parole, he is being supervised by the federal government as part of his parole. He's continuously supervised until March of 2009 when he is released from that parole. All right. I understand he's under supervision. What do you say to the Chief Justice's opinion? He says a service member will be less likely to violate a relevant military regulation if he knows that having done so, he'll be required to register. It's this power, the power to regulate the conduct of members of the military that supports application of the registration obligation to Kibito. Now, Coppock did not know when he committed his offense that he would be required to register as a sex offender. So if it's that power that justified the application of the registration to Kibito, why doesn't it fail as to Coppock? I understand the question. I think there are multiple answers to the question. One is we're talking about a concurring opinion in an otherwise majority opinion. And so, therefore, that opinion is not necessarily binding. My second response is you can look at Justice Alito's opinion, which is also a concurring opinion, which takes, in effect, the opposite position, suggesting that it is reasonable for the government to have done this under these circumstances. As far as, I guess, the nut of your question as to whether or not Mr. Coppock had knowledge at the time in which he would have been convicted or entered his plea in military court as to whether or not this could be. No, it's not when he entered his plea. It's when he committed the offense. Or committed the offense. Either way. Whether or not he would have understood that to be a collateral consequence. He could have understood that to be a collateral consequence in that during that time period there were state requirements that would have, in many states, not Nebraska yet, but in many states, that would have required him to register as a sex offender. So, therefore, the general idea that he could have been required or one of the collateral consequences could have been that he would have had to have registered as a sex offender would not necessarily have been foreign to him. What would have been foreign to him at that particular time would have been whether or not he would have had to have registered because the federal government was requiring him to register as a sex offender. And I think that's a different question and a different issue, but not necessarily dispositive. There is nothing that stops the government by Chief Justice Roberts' opinion, Justice Alito's opinion, or the majority's opinion from reaching back and taking a federal offender and having him register under a sex offender registry and having him be required to register under SORNA. Provided that he was under some sort of federal supervision at some period of time and wasn't completely free from government supervision. And that's not the case of Mr. Coppock, hasn't been the case of Mr. Coppock, and that's Mr. Coppock I submit to you as a major hurdle as it comes to evaluating this particular case. If you look at Judge Alito's concurrence, I think that is again, it's a concurrence, it's not the majority opinion. It has the same value as Justice Roberts' opinion. But he noted that the Military Code of Justice authorizes members of the military to be tried before a military tribunal. That states usually have concurrent jurisdiction especially for crimes committed off base. When a serviceman is court marshaled, the state has usually deferred. And when convicted by a military tribunal, a sex offender may fall through the cracks of a state sex offender registry. That the state can't require military tribunals to notify a state registry. And a state can't require the prison officials to notify local officials when one of those sex offenders is being released. And so therefore, he believed that Congress has the power under the Necessary and Proper Clause to diminish that danger. And by diminishing that danger, one would assume that that means to require individuals such as Mr. Coppock, such as specifically Mr. Kibito in that particular case to register as sex offenders under SORN. I don't think it's necessary to go over the facts of this matter because they are not in dispute. There's no suggestion that there's anything other than both parties have laid out in this particular matter. But I want to give credit to both the magistrate judge and the district court judge when they first determined this matter. Kibito, the decision was decided shortly before we had our initial hearing on the motion to dismiss before the magistrate judge. That case was brought to the attention of the magistrate judge before the matter was presented, before we had the hearing. And the magistrate judge was able to note that unlike Kibito, who was unconditionally released from all supervision when SORN was enacted, Coppock remained under federal parole supervision. And factually, that makes a large difference. What I indicated earlier with regard to the en banc decision and the way that the Fifth Circuit narrowly tailored this issue and the way that the Supreme Court narrowly responded to this issue was observed by Judge Battalion before the Supreme Court decision in Kibito came about. In his order, Judge Battalion noted the following. The Fifth Circuit's finding expressly excluded the registration requirements for, first of all, any federal sex offender who was in prison or on supervised release when the statute was enacted in 2006. The defendant fits that category. He was on parole when the statute was enacted. So from the outset, they were able to determine the distinction in this matter, the primary and basic distinction of this case that makes it stronger than both Elk Shoulder and Kibito. And that is the fact that he was on parole. Federal parole, by definition, is a release under supervision of a parole officer following service of some sort of incarceration. And supervised release and parole are virtually identical systems. So with that in mind, unless there are any other questions. The date of conviction is irrelevant. The date of the offense. By my argument, the date of the offense is somewhat irrelevant, as long as there was continuous supervision. I'm not suggesting that if the date of the offense was so old that there wasn't any federal supervision, that he had completely made himself free of federal supervision, that that wouldn't be an issue. But that's not what's the majority opinion. I understand that. And the majority? That's a weaker case than Coppock. I'm saying that the... Coppock's a stronger case for the government than Kibito, where they said, the Supreme Court, when they were upholding it, is that the registration was in place at the time he committed his offense. That's one of the reasons they said they were upholding it there. I still believe it's a stronger case, and I believe that the court in Kibito had to invoke the Jacob Wetterling Act in order to get to the conclusion that it did, to show that the defendant was no longer under federal supervision. We don't have to do that here, because he was under federal supervision and federal probation when SORNA was enacted. Alternatively, you can look to the Ninth Circuit's decision in Elkshoulder, and you can see that at some point before, in this case, Mr. Coppock was released from prison, he would have had an obligation to register with the state of Nebraska and its sex offender registry. And that was basically the same situation with regard to Elkshoulder, in that Elkshoulder's conviction occurred prior to the Jacob Wetterling Act, and he was off of all supervised release at the time in which SORNA was enacted. So again, Coppock is a stronger case than Mr. Elkshoulder, but the Ninth Circuit was still able to determine that because he was subject to Wetterling Act violations, and if he had moved, he would have been required to register as a sex offender, that that brought him under federal supervision. And again, I believe that this case is much stronger than that. Unless there are any other questions, I would urge the Court to affirm. Is there any significance to the fact that the SORNA violation occurred after his parole was over? That the SORNA violation itself occurred after Mr. Coppock's parole was over? No, because you can reach back with regard to individuals. He still had an obligation to register as a sex offender. Because he was a federal sex offender, he would have been required to report all interstate movements. And remember, what he did was, although it was an interstate matter, he suggested that he had moved to the Philippines, and that was under his registry, his actual address. And in fact, what he did was he moved from one town in Nebraska into Omaha, but as far as the registry was concerned, he was in the Philippines. And how does that further Congress's interest in carrying out the military regulation clause? I don't know that it necessarily is a military regulation clause at that particular point, but perhaps a necessary and proper clause, and maybe that gets us back to Justice Alito's talk about how you can have cases that fall between the cracks, and Congress, through its Article I powers, should be able to diminish that concern. I see that my time is up, but if there are any... One understands Congress's desire to make this statute as applicable as possible, but it seems like there is all some pretty, well, intricate mental feats to try to rationalize applying it in this case. Maybe not. A gratuitous observation that I have sworn never to make again. Thank you for your argument. All right, thank you. Mr. McWilliams? I think the problem with a case like this is essentially what the government is asking the court to do is to retroactively apply SORNA, and in order to do that they want the court to retroactively apply the Wettering Act, and in order to do that you have to retroactively apply a Nebraska state registration obligation, all of this to an individual who committed his offense in 1990 at a time when there were no state registration obligations in the states that he would ultimately live, including Nebraska, and no registration obligations for any court-martial conviction or court-martialable offense. And that is the problem with this case, because what the Kebido opinion says is that this is a proper application of Congress' ability to regulate the military forces and to enforce the Uniform Code of Military Justice, and there's no plausible claim that it's doing that as applied to James Coppock. Mr. Coppock committed his offense, was convicted, court-martialed, imprisoned, and released all before the enactment of the legislation that we're debating here today. Well, suppose they said, we have some guys who are on parole under military authority, and we're afraid they're going to be dangerous if they're released because of their sex offense history, so we want to, as part of our military regulation, we want to make sure these people register. Would that be within Congress' power? I don't believe so, Your Honor. I think that the Uniform Code of Military Justice is designed at maintaining good order and discipline and enforcing their legal structure, that the presence of a few lingering parolees does not further the enforcement of good order and discipline within the military. At the point when, and I don't know this because I don't think there were any findings of fact, but there's a certain point when, after you're court-martialed, you go into an appellate leave status and you're discharged, and you do serve your parole under the courtesy supervision of a parole office, or a US probation office, but you're no longer in the military. And I only know that from having been a judge advocate, but we don't know if that happened in Mr. Coppock's case, and I think it's a stretch. I'd ask the court to grant my motion to dismiss. Thank you. We thank both sides for the arguments, and there are supplemental briefs in accordance with our order. The court will be in recess until 9 o'clock tomorrow morning. Thank you.